# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 24-2592

JOHN OMAR WILLIAMS,                                                      APPELLANT,

v.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS,                                          APPELLEE.

Before ALLEN, *Chief Judge*, and TOTH and JAQUITH, *Judges*.

## O R D E R

ALLEN, *Chief Judge*, filed the opinion of the Court. TOTH, *Judge*, filed a concurring opinion. JAQUITH, *Judge*, filed a concurring opinion.

Appellant John Omar Williams served the Nation honorably in the U.S. Army and the National Guard from June 1969 to June 1973, July 1989 to August 1995, and April 2004 to April 2005.[1] In this appeal, which is timely and over which the Court has jurisdiction,[2] he contests a February 5, 2024, Board of Veterans' Appeal (Board) decision.[3] The issue before the Court is whether the Board erred by not addressing if the record reasonably raised appellant's entitlement to a total disability rating based on individual unemployability (TDIU).

While the TDIU question is the ultimate issue before the Court, to answer that question this appeal calls on us to wrestle with how the Federal Circuit's recent decisions concerning the limits on the Court's power to make factual determinations affect our authority to determine whether the record reasonably raises an issue. As we will explain, we hold that while nothing in the Federal Circuit's recent caselaw concerning factfinding undermines the Court's *authority* to assess whether the record reasonably raises an issue, the factfinding caselaw affects *how* the Court makes that determination. In this case, because we are limited in what factfinding we can do in the

---

[1] Record (R.) at 5340, 5342, 4655.

[2] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[3] R. at 5-14. In the February 5, 2024, Board decision on appeal, the Board expressly addressed three matters, none of which are before the Court. Specifically, the Board granted appellant a 70% disability rating for adjustment disorder with depressed mood. This is a favorable determination we may not review. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007), *aff'd in part*, *dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009). The Board also dismissed an appeal of the denial of an initial disability rating greater than 10% for tinnitus. Appellant does not challenge this dismissal. Appellant also does not argue that he is entitled to a disability rating greater than 70% for an adjustment disorder with depressed mood under the terms of the relevant diagnostic code. So, he has abandoned any appeal of those matters. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc). Finally, the Board remanded appellant's claim to a disability rating greater than 20% for prostate cancer prior to June 24, 2020. The Court lacks jurisdiction to review this remanded matter. *See Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order).

first instance, we will exercise our discretion to remand this matter to the Board for the limited purpose of the Board addressing if TDIU was reasonably raised by the record while retaining jurisdiction. After the Board answers the specific question we pose for remand, we will be able to address the TDIU issue before us without running afoul of the Federal Circuit's caselaw concerning our factfinding.

Before proceeding, we note that we held oral argument in this matter on March 26, 2026, at Albany Law School, in Albany, New York, as part of the Court's outreach program. The Court thanks the students, staff, and faculty at Albany Law School for their hospitality.

## I. BACKGROUND

In November 2007, appellant sought service connection for prostate cancer and PTSD.[4] In October 2008, a regional office (RO) denied service connection for PTSD but granted service connection for prostate cancer.[5] In February 2009, appellant filed a claim for depression secondary to his prostate cancer.[6] In March 2009, the RO granted service connection for major depressive disorder, also diagnosed as adjustment disorder, and assigned a 30% rating, effective February 11, 2009.[7]

In January 2010, appellant sought an increased rating for his adjustment disorder.[8] In March 2010, he underwent a VA psychiatric examination.[9] Eventually, in May 2010, the RO increased the rating of appellant's adjustment disorder to 50%; notably, the same decision denied entitlement to TDIU.[10]

In April 2018, appellant's primary care physician noted that appellant "is not working currently and is still looking to move to Germany to teach."[11] In August 2018, appellant filed another increased rating claim for his adjustment disorder.[12] Then, in October 2018, a VA psychiatric examiner noted that appellant was currently working 3 hours per day as a lunchroom monitor.[13] The examiner opined that appellant faced "[o]ccupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or

---

[4] R. at 9752.

[5] R. at 9242.

[6] R. at 9135.

[7] R. at 8998.

[8] R. at 8609.

[9] R. at 8536-41.

[10] R. at 8491-92.

[11] R. at 5664.

[12] R. at 5582.

[13] R. at 5398.

2

mood,"[14] "difficulty in establishing and maintaining effective work and social relationships,"[15] and "bouts of passive suicidal ideation with no history of plans or attempts,"[16] among other symptoms.

At a December 2018 VA psychiatric exam, the examiner noted that appellant worked as a substitute teacher for 2 years before resigning in May 2018; the reason for his resignation was unspecified.[17] When asked about his occupational history, appellant stated: "You do not understand. I have a college degree[,] and I still can't get a job. Even if you do the right thing things still go bad . . . I did what I was supposed to do[,] and they didn't even hire me. I couldn't get a job with an art degree. No one will hire me as an artist! They still wouldn't let me teach, someone always bumped me out."[18] Also, a December 2018 neurology exam indicated that appellant worked as a substitute teacher from 2013 to May 2017 but was not currently working at the time of the exam.[19]

In a June 2020 rating decision, the RO continued the 50% rating for adjustment disorder.[20] In July 2020, appellant filed a Notice of Disagreement.[21] In the February 2024 Board decision on appeal, the Board determined that appellant should be rated for adjustment disorder at 70%, but not 100%, categorized as "occupational and social impairment with deficiencies in most areas."[22] In doing so, the Board analyzed the extent of appellant's depression symptoms, concluding that his adjustment disorder included "an inability to establish and maintain effective relationships and suicidal ideations."[23] The Board did not explicitly address either appellant's work history or his testimony from the December 2018 exam.[24] The Board also did not discuss entitlement to TDIU at all.

## II. ANALYSIS

### A. The Parties' Arguments and Course of Proceedings

On appeal, appellant originally argued that the Board erred by failing to provide an adequate statement of reasons or bases because it did not address whether the record reasonably raised whether he was entitled to TDIU.[25] The Secretary defended the Board's omission of an

---

[14] R. at 5396.

[15] R. at 5399.

[16] R. at 5398.

[17] R. at 5173.

[18] *Id.*

[19] R. at 5104.

[20] R. at 1684-86.

[21] R. at 1667-68.

[22] R. at 5-6.

[23] R. at 11.

[24] R. at 10-12.

[25] Appellant's Brief (Br.) at 7-11.

3

analysis about TDIU on the ground that the record did not raise the matter sufficiently to require the Board to address TDIU at all.[26]

On August 8, 2025, a single Judge issued a memorandum decision that affirmed the Board's decision, concluding that the Board did not err when it failed to discuss TDIU because the record did not reasonably raise that issue.[27] Appellant then filed a motion for reconsideration and/or panel review under Rule 35 of the Court's Rules of Practice and Procedure.[28] In his Rule 35 motion, appellant argued that the Court had inappropriately weighed facts in the first instance when it determined that the record did not raise the issue of entitlement to TDIU and that remand was the appropriate outcome in this matter for the Board to make that assessment in the first instance.[29]

The single Judge denied reconsideration, and a panel was appointed to consider this case.[30] On November 7, 2025, the panel issued a supplemental briefing order.[31] In response, appellant changed his position, arguing that the Board, through its silence, had made an implicit determination that the record did not raise entitlement to TDIU.[32] The Secretary's supplemental brief was less clear about how he saw what the Board did, but he continued to defend the Board's decision.[33] However, at oral argument both parties agreed that they believed that the Board made an implicit factual determination that the record did not raise entitlement to TDIU.[34] Despite this agreement, the parties disagreed about the import of that supposed implicit determination.

Given the parties' arguments and the course of proceedings, there are essentially two substantive questions before us: (1) Does the Board's silence implicitly mean that the Board determined that the record did not raise entitlement to TDIU? And (2) if the Board's silence was not an implicit determination on that question, can the Court in the first instance determine that TDIU was reasonably raised by the record? As we will explain below, as to the first question, and despite the parties' agreement to the contrary, we conclude that the Board did not make any determination about entitlement to TDIU through its silence. We don't say that the Board could never make such an implicit determination. Rather, it just did not do so here. With respect to the

---

[26] Secretary's Br. at 6-12.

[27] *Williams v. Collins*, No. 24-2592, 2025 WL 2267935 (Vet. App. Aug. 8, 2025) (mem. dec.) (withdrawn Nov. 6, 2025) (per curiam order).

[28] Appellant's Aug. 28, 2025, Motion for reconsideration or in the alternative, for a panel decision.

[29] *Id.* at 5-6.

[30] November 6, 2025, Order denying single-judge reconsideration, granting panel review (per curiam order).

[31] November 7, 2025, Order for supplemental briefing (per curiam order).

[32] Appellant's Supplemental Br. at 3-5.

[33] Secretary's Supplemental Br. at 5-6.

[34] Oral Argument (OA) at 5:09-5:41; 32:33-32:49, https://www.youtube.com/watch?v=fU-a4qxRxk8. We note that appellant overreads the Federal Circuit's decision in *Bean v. McDonough*, 66 F.4th 979 (Fed. Cir. 2023), as part of his argument. Appellant seems to read *Bean* as providing some sort of rule about Board silence equating to the denial of a claim. Appellant's Supplemental Br. at 2-3. *Bean* does not go that far. Instead, *Bean* merely supports the notion that the Court has jurisdiction to consider whether the Board erred in connection with an issue that was before it (including by being raised by the record). But that point is not in dispute here. Both parties agree we have jurisdiction, and we have independently assured ourselves that we have jurisdiction under *Bean* and similar authority.

4

second question, we hold that the Court is empowered to determine whether the record reasonably raised entitlement to TDIU in the first instance, but that it is constrained in doing so by the Federal Circuit's recent caselaw concerning limitations on the Court's factfinding authority. In the case before us, we conclude the record does not allow us to make the determination about TDIU without running afoul of the limitations on our factfinding ability. To address that issue, we will exercise our discretion to issue a limited remand, while retaining jurisdiction, for the Board to address, in the first instance, whether the record reasonably raised the issue of entitlement to TDIU.

## B. The Legal Landscape

"VA compensates veterans for their service-connected disabilities through its rating schedule, which is designed to reflect the average impairment in earning capacity that a veteran with a certain type of disability would experience."[35] But VA also recognizes that there are situations in which a veteran is not 100% disabled as a result of service-connected disabilities but, nonetheless, is unemployable.[36] This individualized employability assessment for TDIU is set forth in 38 C.F.R. § 4.16.[37]

A claimant is "generally . . . presumed to be seeking the maximum benefit allowed by law and regulation."[38] Thus, "the Secretary is required to maximize benefits" and "'render a decision [that] grants every benefit that can be supported in law.'"[39] The Board is required to consider all theories of entitlement to VA benefits that are either raised by the claimant or reasonably raised by the record.[40] The Court has jurisdiction to review whether the Board erred in failing to consider such theories.[41] We have held that the Board should address TDIU where there is evidence of unemployability and the veteran is not receiving the maximum rating.[42] As we have explained, TDIU is not a separate claim "but rather involves an attempt to obtain an appropriate rating for a disability or disabilities."[43] While entitlement to TDIU can be part of an initial claim or a claim seeking an increased rating,[44] the Board is only required to address entitlement to TDIU if the record "presents cogent evidence of unemployability."[45]

---

[35] *Ray v. Wilkie*, 31 Vet.App. 58, 63 (2019) (citing 38 C.F.R. § 4.1 (2018)).

[36] *Id.*

[37] 38 C.F.R. § 4.16 (2026).

[38] *AB v. Brown*, 6 Vet.App. 35, 38 (1993); *see also Tatum v. Shinseki*, 23 Vet.App. 152, 157 (2009).

[39] *Bradley v. Peake*, 22 Vet.App. 280, 294 (2008) (quoting 38 C.F.R. § 3.103(a) (2008)); *see also Morgan v. Wilkie*, 31 Vet.App. 162, 164 (2019).

[40] *Robinson v. Peake*, 21 Vet.App. 545, 553 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009).

[41] *Barringer v. Peake*, 22 Vet.App. 242, 244 (2008); *see Bean*, 66 F.4th at 989.

[42] *See Harper v. Wilkie*, 30 Vet.App. 356, 361 (2018).

[43] *Rice v. Shinseki*, 22 Vet.App. 447, 454 (2009); *see also Harper*, 30 Vet.App. at 361.

[44] *See Rice*, 22 Vet.App. at 453-54.

[45] *Comer v. Peake*, 553 F.3d 1362, 1367 (Fed. Cir. 2009); s*ee Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001) ("Once a veteran submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability, the 'identify the benefit sought' requirement of 38 C.F.R. §

Whether an issue is reasonably raised by the record is essentially a question of fact, which the Court reviews for clear error.[46] The Court will reverse a factual finding of the Board only when, after reviewing the evidence of record, we are "'left with the definite and firm conviction that a mistake has been committed.'"[47] In addition, it is well-established that for all its findings on material issues of fact and law, the Board must support its decision with an adequate statement of reasons or bases that enables "a claimant to understand the precise basis for the Board's decision" and "facilitate[s] review in this Court."[48] If the Board failed to do so, remand is appropriate.[49]

C. The Board's silence about TDIU was not an implicit determination about anything.

We first must address whether the parties are correct that the Board's silence amounts to an implicit determination that the record did not reasonably raise entitlement to TDIU. This is an important question. If the Board implicitly ruled that the record did not raise the issue of entitlement to TDIU, it would have made a factual finding. And in that case, two points follow. First, we would review that determination for clear error.[50] And second, the Board would have to support its implicit determination with an adequate statement of reasons or bases.[51]

We are not writing on a blank slate in terms of implicit factual determinations. So, we start off with a general principle. The Court has recognized that the Board can make implicit factual determinations in certain circumstances. We see no principled reason why the Board could not implicitly determine that the record did not reasonably raise entitlement to TDIU. So, we conclude that the Court's caselaw concerning implicit determinations informs the question before us.

At the same time, however, we think there is no basis to conclude that the Board's silence about whether the record reasonably raised the issue of entitlement to TDIU always means that it implicitly ruled on that issue. Instead, there must be something in the decision that indicates that the Board intended its silence to reflect a considered assessment about whether the record reasonably raised entitlement to TDIU.

Two illustrations from the Court's caselaw are helpful in terms of assessing what the Board's silence means. One situation in which the Court has recognized implicit factfinding is *Miller v. Wilkie*.[52] There the Court held that "[w]hen the Board has made its decision without finding that the veteran is not competent to report symptoms and nothing suggests that the Board

---

3.155(a) is met[,] and [] VA must consider TDIU.").

[46] *See* 38 U.S.C. § 7261(a)(4); *Robinson*, 21 Vet.App. at 553.

[47] *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[48] *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *see* 38 U.S.C. § 7104(d)(1); *Medlin v. Collins*, 39 Vet.App. 159, 169 (2026), *appeal docketed*, No. 26-1885 (Fed. Cir. May 29, 2026); *Gilbert*, 1 Vet.App. at 57.

[49] *See Tucker v. West*, 11 Vet.App. 369, 374 (1998).

[50] *See Lynch v. Wilkie*, 30 Vet.App. 296, 304 (2018) ("Whether an issue is reasonably raised by the record is essentially a question of fact, subject to the 'clearly erroneous' standard of review.") (internal citations omitted).

[51] *See* 38 U.S.C. § 7104(d)(1).

[52] 32 Vet.App. 249, 260-61 (2020).

failed to review the evidence at issue, we may reasonably conclude that it implicitly found the veteran credible."[53]

*Miller* represents a situation in which the nature of the decision itself points towards an implicit factual finding. In other words, in *Miller* it would have made no sense for the Board to do what it did if it had not found the veteran credible. If we were writing on a blank slate, we might conclude that entitlement to TDIU would qualify under a *Miller*-like analysis when the Board was also rating a mental disorder as it did here. After all, a large part of the criteria for evaluating a mental disorder deals with occupational impairment.[54] But we aren't writing on a clean slate. The Board does not have to address TDIU in every case, even those connected to evaluating a mental disorder. Rather, as we noted above, the Board is only required to consider entitlement to TDIU when the record "presents cogent evidence of unemployability."[55]

The Court has also held that in certain circumstances we can assume the Board made an implicit finding because of the specific context provided in a Board decision. A prime example concerns an implicit finding that a medical opinion was adequate even when the Board did not explicitly provide that determination.[56] In those cases, there were textual cues pointing to both the fact that the Board had made the determination, as well as the grounds for the determination.[57] In cases such as *Walleman v. McDonough* and *Mitchell v. Shinseki*, the Board discussed the opinion at issue and its discussion allowed the Court to understand why the Board considered the opinion appropriate for adjudication purposes. There is nothing in the Board's decision on appeal that is akin to the situations in which the Court has determined that the Board implicitly determined that a medical opinion was adequate.[58] In other words, there is no indication that the Board thought about TDIU at all.

And this brings us to a practical problem if we were to accept the parties' positions that silence about TDIU equates to an implicit factual determination that the record did not raise the entitlement to that benefit. If we assume that silence in this context means that the Board considered whether the record raised TDIU and determined that it did not, the Court's clear error review would be difficult (if not impossible) to perform because there would be only silence to review. It might also lead to the conclusion that in all (or at least most) situations in which we consider whether the record reasonably raised entitlement to TDIU there would be a reasons-or-bases problem. As the Court recently stated, the reasons-or-bases requirement

> naturally focuses on whether the Board has rendered all the
> necessary findings on material issues of fact and law and whether its
> analysis of such findings is intelligible to the claimant and the Court
> alike. If the Court needs to guess what the Board's reasoning might

---

[53] *Id.* at 261.

[54] *See* 38 C.F.R. § 4.130 (2026).

[55] *Comer*, 553 F.3d at 1367.

[56] *See*, *e.g.*, *Walleman v. McDonough*, 35 Vet.App. 294, 307 (2022); *Mitchell v. Shinseki*, 25 Vet.App. 32, 43 (2011).

[57] *Id.*

[58] *Id.*

be as to a material issue of fact or law, the Board has violated its duty to provide adequate reasons [or] bases. [59]

If the parties were correct about the meaning of the Board's silence, there would be nothing for the Court to do but guess about the Board's reasoning. That can't be right.

To be clear, a Board decision *could* include an implicit finding about whether the record reasonably raised entitlement to TDIU. But the Board decision would need the textual to exist when the Board makes an implicit adequacy determination concerning a medical opinion. As we've said, there are no such cues in the decision before us.

In sum, we conclude that the Board's silence here means what silence usually does: nothing. So, we are unable to engage in clear error review because the Board made no finding for us to review. We must transition to a different path to resolve the appeal.

### D. The Court's Ability to Determine, in the First Instance, if the Record Reasonably Raised Entitlement to TDIU

This leads us to the second issue—the one we thought was originally presented. Specifically, we consider the scope of the Court's authority to review the record to determine whether TDIU was reasonably raised such that the Board was required to discuss that issue. And more to the point, we do so in light of recent Federal Circuit precedent concerning the prohibition on factfinding in the first instance at the Court.[60]

We begin with an important recognition. There is no question that the Court has the authority to review the record to determine whether there is an issue the Board was required to address.[61] This is a well-established legal principle. There is no indication that anything in recent Federal Circuit caselaw concerning factfinding undermines that well-established precedent. The question we address here is how the Court can balance our authority to review the record while remaining faithful to the limits on our ability to weigh evidence in the first instance.

### 1. Recent Federal Circuit Decisions

We begin our exploration of this question by considering the Federal Circuit's recent decisions in *Tadlock* and *Stinson* and, in particular, how the principle those decisions recognized applies when the Court considers whether the record reasonably raised an issue. We note that in both cases, the Federal Circuit addressed the Court's obligation to "take due account of the rule of prejudicial error."[62] So, our task is to discern how a rule articulated in the prejudicial error context applies more generally.

---

[59] *Medlin*, 39 Vet.App. at 169.

[60] *See Stinson v. McDonough*, 92 F.4th 1355 (Fed. Cir. 2024); *Tadlock v. McDonough*, 5 F.4th 1327 (Fed. Cir. 2021).

[61] *See Bean*, 66 F.4th at 988; *Lynch*, 30 Vet. App. at 304–06; *Garner v. Tran*, 33 Vet.App. 241, 247 (2021); *Robinson*, 21 Vet.App. at 555.

[62] 38 U.S.C. § 7261(b)(2).

To frame the issue, we highlight that the Federal Circuit stated directly that the Court "exceed[s] its statutory authority when it improperly weigh[s] evidence in the first instance."[63] The problem (or at least potential problem) is that if the Court cannot weigh evidence in the context before us, it is difficult to see how we can do much more as a practical matter than categorically remand cases when the claimed error is a failure of the Board to address if an issue was reasonably raised by the record. Stated differently, the danger here is endless automatic remands leading to future appeals with potentially little practical benefit to veterans.[64]

While the issue before the Federal Circuit in *Tadlock* and *Stinson* was this Court's assessment of prejudice, each decision used broad language concerning the limits on this Court's authority related to factfinding. In *Stinson*, the Federal Circuit provided a categorical prohibition: "The Veterans Court has no statutory authority to make factual findings in the first instance. The Veterans Court also has no statutory authority to weigh evidence in the first instance."[65] Meanwhile in *Tadlock*, the Federal Circuit provided a more focused limitation:

> When questions of fact are open to debate, veterans are entitled to present whatever evidence and arguments they have to the agency charged with administering veterans' benefits and possessed with the expertise to render informed judgments and to have that evidence and those arguments considered by that agency in the first instance.[66]

So, it is our job to balance the holdings in both these cases to appropriately exercise our authority here.

*Stinson* acknowledged that this Court "may appropriately assess whether the record contains sufficient evidence, as a matter of law, to support a particular argument."[67] As far as it goes, this acknowledgement is important with respect to the issue we address today—whether the record required the Board to address entitlement to TDIU. However, the Federal Circuit also instructed that: "What the Veterans Court cannot do, however, is find facts or weigh evidence in the first instance when entertaining a newly raised issue, as it did in this case."[68] So, we are back to the question at hand because we are left with broad rules without consideration of how those rules apply beyond assessing prejudicial error.

An additional point concerns the rationale *Stinson* provides for its rule, one that goes beyond harmless error analysis. Specifically, the Federal Circuit highlights that inappropriate factfinding or weighing of evidence deprives veterans of their rights to present issues to the agency

---

[63] *Stinson*, 92 F.4th at 1362.

[64] *See Coburn v. Nicholson*, 19 Vet.App. 427, 434 (2006) (Lance, J., dissenting) (discussing the "hamster-wheel reputation of veterans law").

[65] *Stinson*, 92 F.4th at 1360-61 (citations omitted).

[66] *Tadlock*, 5 F.4th at 1337.

[67] *Stinson*, 92 F.4th at 1363.

[68] *Id*. at 1363.

9

and then receive meaningful appellate review in this Court.[69] This rationale certainly extends to matters such as one before us today, even if the Federal Circuit has yet to explore the specific question we face.

To recap, it is not clear how far the "open to debate" language from *Tadlock* extends beyond the prejudicial error analysis. Does it apply in the same way to the situation we face now when assessing whether the record raises an issue? Does it apply in the same way to our assessment about reversal of a finding is appropriate? We just don't know for sure. Nor is it clear the degree of evidence that is necessary for an issue to be considered "open to debate." So that leaves us without a clear sense of what we are allowed to do, if anything, to clarify this issue.

This brings us to another Federal Circuit decision: *Golden v. Collins*, a case in which the Federal Circuit rejected an appellant's argument that this Court made inappropriate factual findings under *Tadlock* and *Stinson*.[70] *Golden* is potentially significant for two reasons. First, it did not concern harmless error analysis.[71] That is at least some indication that the *Tadlock/Stinson* analysis is not confined to the prejudicial error analysis. After all, if the *Tadlock/Stinson* analysis was limited to prejudicial error, that would have been a straightforward way to address the issue in *Golden*.

Second, the Federal Circuit appeared to recognize that this Court's review of the existing record to make some sort of assessment was within our authority. The Federal Circuit stated: "The Veterans Court is not precluded from 'synthesizing,' 'analyzing,' and 'paraphrasing' the Board's decision, as these actions do not constitute independent fact[]finding."[72] In rejecting appellant's assertion that the Court had transgressed the prohibition on factfinding, the Court said: "Here, the Veterans Court simply acknowledged that the record reflected the 2011 examiner was the only examiner who linked Mr. Golden's hearing loss and tinnitus."[73] This sentence at least suggests that reviewing the record may pose different questions than engaging in prejudicial error analysis. Of course, the Federal Circuit followed up that sentence by noting that appellant "does not dispute this fact," perhaps suggesting that the court was applying the beyond debate notion from *Tadlock* and *Stinson*.[74] The bottom line is that *Golden* is helpful but does not resolve the issue we face in this appeal.

We pause to highlight an additional case at the Federal Circuit: *Yurk v. Collins*. During the oral argument in *Yurk*, the Federal Circuit panel hearing the case appeared to recognize the difficulty of reflexively adopting a broad interpretation of "open to debate" when assessing whether the record reasonably raised an issue.[75] We had hoped that the argument would lead to a

---

[69] *Id.*

[70] 161 F.4th 1346, 1351-52 (Fed. Cir. 2025).

[71] *Id.*

[72] *Id.* at 1352.

[73] *Id.*

[74] *Id.*

[75] OA at 10:40-15:21, *Yurk v. Collins*, 2026 WL 632438 (Fed. Cir. Mar. 6, 2026) (per curiam judgment) (No. 2024-2023), https://www.cafc.uscourts.gov/03-05-2026-2024-2023-yurk-v-collins-audio-uploaded/.

decision that provided guidance about the question before us today. Unfortunately for our purposes today, the Federal Circuit summarily affirmed the decision in *Yurk* without an opinion.[76]

The reality is that we are in a position in which the law is evolving and uncertain. The downside of that reality is that we are largely incapable of resolving the present uncertainty because we are dealing with decisions of the Federal Circuit that we are bound to do our best to carry out and can't change. The upside is that we trust the Federal Circuit will resolve the uncertainty as it continues to develop the doctrine in this area. But for today, we take the law as it is, or at least as how we best interpret it.

### 2. An Attempted Synthesis

So, what are we to do with the specific question before us? Merely for purposes of articulating an approach to the question about how the Court should address whether an issue was reasonably raised by the record in the first instance given the limitations on factfinding, we will use the metaphor of a spectrum. On one end, there are situations in which the Court can definitively say that the Board did not err in failing to address an issue without any risk of inappropriately weighing evidence. In that regard, even appellant agrees that "[w]here a fully developed record is presented to the Board with *no evidentiary support for a particular theory of recovery*, there is no reason for the Board to address or consider such a theory."[77] How far this end of the spectrum goes without running into evidence weighing issues is uncertain. At the other end of the spectrum are cases in which the evidence is so overwhelming that the Board should have discussed the issue that there can be no debate that the Board erred. Again, we can't say for sure how broad this part of the spectrum is, but we are confident that it exists.

By definition, the spectrum analogy precludes a binary approach in which the two ends of the spectrum represent the full scope of the Court's choices—the record reasonably raised the issue or it did not.[78] That binary approach seems to track how the Court approached the issue historically; but if the Federal Circuit's factfinding decisions have done anything, they have converted the binary into a spectrum.[79]

And that recognition brings us to the real challenge: what to do when a matter exists in the middle of our metaphorical spectrum. We recognize that individual judges will view the issue we are addressing through different eyes. Some judges will have more expansive views of one end of the spectrum or the other. But there will always be cases in the middle. At that point, a judge will

---

[76] *Yurk*, 2026 WL 632438. To be sure, judges' questions at oral argument are not binding authority and don't even necessarily suggest a case's outcome. But they highlight the difficulty we face in addressing the issues in this appeal.

[77] *Robinson*, 557 F.3d at 1361 (emphasis added).

[78] *See Yurk* OA at 10:40-15:21.

[79] We note that some of the caselaw addressing the reasonably raised issue seems to go beyond what the Court could appropriately do if *Tadlock* and *Stinson* apply in any meaningful way to this situation. A prime example is *Lynch,* in which the Court goes into great detail about why it determined the record did not raise the matter at issue. *See Lynch*, 30 Vet.App. at 304-06; *see also id*. at 306-09 (Allen, J., concurring in part and dissenting in part). Another example is *Garner*, in which the Court considered whether the record reasonably raised the possibility of obesity being an intermediate step in the context of a service connection claim. *See* 33 Vet.App. at 246-49.

11

use his or her best efforts to resolve the "reasonably raised" issue consistent with the limits on factfinding. What we offer here is a tool that may be employed in a judge's discretion to address a difficult case in the middle of the spectrum: a limited remand while the Court retains jurisdiction. We turn to that tool next.

### 3. Limited Remand

In *Skaar v. Wilkie*, the Court ordered a limited remand so the Board could address an argument appellant had expressly raised below but that the Board had ignored.[80] While not laying out an exhaustive test for determining when to use a limited remand, the Court stressed that the issue at the heart of the remand did not require vacating the Board decision.[81] The same is true here, although for a different reason. As we will explain in the next section, we can't tell if there is an error in the Board's failure to address entitlement to TDIU without potentially committing an error ourselves by overstepping our factfinding limitations. In addition, the *Skaar* Court stressed that it was dealing with a unique circumstance because the Court was faced with a class action motion that potentially required action from the Board on the neglected issue.[82] We face a similar situation, at least conceptually. How the Court's role in reviewing whether an issue is reasonably raised by the record interacts with the Federal Circuit's recent decisions concerning the limitation on the Court's factfinding authority is also a unique and developing area of the law.

When confronted with the question of whether the Board erred by failing to discuss whether the record reasonably raised an issue, we are faced with the danger of overstepping our limitations on factfinding. We, therefore, conclude that retaining jurisdiction and issuing a limited remand for the Board to address whether the record was sufficient to require a discussion is the appropriate option for the Court in this case. And we may, in our discretion, use this tool instead of reflexively issuing a reasons-or-bases remand.

We stress again that the Court is operating in a period in which we are uncertain about the contours of the doctrine the Federal Circuit has discussed in *Tadlock*, *Stinson*, and *Golden*. We make this point again not to be critical but rather to highlight that a limited remand to address cases like the one before us may be a tool that will not be needed often in the future. But the mere fact that a tool in a toolbox will not be needed tomorrow doesn't mean it isn't important today.

### 4. Application

Here, appellant points to several examples of evidence that he was unemployable due to his service-connected adjustment disorder, evidence he maintains required the Board to discuss entitlement to TDIU. Appellant cites the April and December 2018 VA medical exams, both of which indicated that he was not currently working.[83] He further emphasizes his 2018 testimony:

---

[80] 31 Vet.App. 16, 17-18 (2019) (en banc order) (per curiam).

[81] *Id*. at 19.

[82] *Id*.

[83] Appellant's Br. at 9-10 (citing R. at 5104, 5664).

"I have a college degree[,] *and I still can't get a job*. Even if you do the right thing[,] things still go bad."[84]

Appellant also cites his adjustment disorder symptoms—irritability, fair to poor insight, bouts of passive suicidal ideation, difficulty in establishing and maintaining effective work relationships, and so on—that formed the basis for his 70% adjustment disorder rating.[85] Appellant contends that the Board failed to address his work history or his testimony at all, as well as whether his symptoms would impact his ability to secure and maintain substantially gainful employment.[86]

For his part, the Secretary concedes that appellant was unemployed but argues there is no evidence to suggest appellant's unemployment was due to his adjustment disorder. The Secretary argues there is no explanation for why appellant resigned from his substitute teacher job or was not currently working.[87] Further, the March 2010 exam indicates appellant was "pursuing his educational goals without significant interference from his mental health disorder."[88] The Secretary also emphasizes the second half of appellant's statement from his 2018 Board hearing:

> I have a college degree[,] and I still can't get a job. Even if you do the right thing[,] things still go bad. . . . I did what I was supposed to do[,] and they didn't even hire me. *I couldn't get a job with an art degree.* No one will hire me as an artist![89]

The Secretary contends that nothing about this statement suggests a relationship to appellant's adjustment disorder and argues that appellant's "lay hypothesizing" cannot be considered evidence.[90] And the Secretary argues the symptoms appellant points to have already been captured in the 70% adjustment disorder rating, which presumes "occupational and social impairment in most areas, such as work."[91]

So, it appears that there is potentially sufficient evidence in the record that the Board could determine that TDIU was reasonably raised here. However, the issue is the Board itself did not weigh this evidence. And it is necessary for the Board to do so in the first instance.[92] To return to our earlier analogy, we conclude that this situation falls somewhere in the middle of the spectrum such that we are uncertain whether the Federal Circuit's decisions about factfinding would prevent us from assessing the evidence in a meaningful way. At the same time, we see no need for a full remand given that there is only a narrow issue on which we need the Board to weigh in.

---

[84] *Id.* at 10 (quoting R. at 5173 (emphasis in original)).

[85] *Id.* (citing R. at 5394-5403, 5173, 5176).

[86] *Id.* at 7-10.

[87] Secretary's Br. at 10.

[88] *Id.* (quoting R. at 8539).

[89] *Id.* at 10 (quoting R. at 5183 (emphasis added)).

[90] *Id.* at 11 (citing *Hyder v. Derwinski*, 1 Vet.App. 221, 225 (1991)).

[91] *Id.*

[92] *Robinson*, 21 Vet.App. at 552.

Accordingly, the Court will exercise its discretion to retain jurisdiction and remand this matter to the Board for the limited purpose of deciding whether the record reasonably raised entitlement to TDIU at the time of the February 5, 2024, Board decision.

Upon consideration of the foregoing, it is

ORDERED that the case is REMANDED to the Board solely for the Board to provide a supplemental statement of reasons or bases within 30 days that addresses whether the record at the time of the February 5, 2024, Board decision reasonably raised the issue of entitlement to TDIU such that the Board must address the issue on the merits. It is further

ORDERED that the Court will retain jurisdiction over this matter. It is further

ORDERED that, regardless of the outcome of the Board's determination on remand, the Board shall not take any further action beyond the response required by this order unless and until the Court relinquishes jurisdiction over the matter. It is further

ORDERED that the Secretary will file the Board's supplemental statement with the Court within 3 days after the statement is issued. It is further

ORDERED that parties each submit a supplemental brief, not to exceed 10 pages, concerning the effect, if any, of the Board's supplemental statement on the issues raised in this appeal, within 10 days after the Secretary files the supplemental statement. And it is further

ORDERED that the Court will not entertain any motion for an extension of time with respect to the timeframes set forth in this order, absent compelling circumstances.

DATED: July 27, 2026                                        PER CURIAM.


TOTH, *Judge*, concurring: Given the lack of clarity as to the Court's authority to assess administrative error where the Board is alleged to have failed to consider whether the evidence raises a claim, I join the majority in viewing a limited remand as appropriate here. Absent clear guidance as to whether *Stinson v. McDonough*, 92 F.4th 1355 (Fed. Cir. 2024), delimits this Court's actual jurisdiction to assess administrative error or whether it merely effectuates a governing rule about how the Federal Circuit reviews the factual assessments of *this Court*, the best course is to exercise our authority to retain jurisdiction over the appeal but remand these sorts of questions to the Board on a limited basis to address whether an issue or claim was reasonably raised by the record.

In *Stinson*, the Federal Circuit, as it has elsewhere, asserted that this Court lacked statutory authority to "weigh evidence in the first instance." *Id.* at 1363. The question that immediately follows is what to do in the sizeable segment of appeals where the allegation of error itself is that the Board failed to consider some piece of evidence. As best I can tell, there are two ways to read *Stinson*. The first, which can be deemed the "jurisdictional" reading, takes *Stinson* at face value as a limitation on the Court's jurisdiction insofar as it forms an absolute impediment to the Court's consideration of evidence that hasn't first been discussed by the Board, where such evidence can

14

be deemed "open to debate" at some level. This reading interprets *Tadlock v. McDonough*, 5 F.4th 1327 (Fed. Cir. 2021), as definitively establishing that 38 U.S.C. § 7261 presents a jurisdictional bar against the Court resolving matters in a record that are "open to debate."

The difficulty with this reading is that it places a significant segment of our appeals beyond our jurisdiction. This is because, as the Supreme Court points out, jurisdiction is "a term generally reserved to describe the classes of cases a court may entertain (subject[ ]matter jurisdiction) or the persons over whom a court may exercise adjudicatory authority (personal jurisdiction)." *Fort Bend C'nty v. Davis*, 587 U.S. 541, 543 (2019). Appellate review simply cannot be performed without "weighing evidence" against whatever standard of review governs the question; even the most facile engagement with the evidence of record necessarily entails some form of interpretation that allows for dispositive rulings on appeal. *See*, *e.g.*, *Golden v. Collins*, 161 F.4th 1346, 1352 (Fed. Cir. 2025). Because engagement with evidence is unavoidable, reading *Stinson* as establishing a jurisdictional rule necessarily places off limits the significant segment of cases (including this one) that require engagement with evidence not discussed by the Board.

The second way of reading *Stinson* is as a standard of review by which the Federal Circuit reviews factual assessments of *this Court*. This reading interprets *Stinson* (and *Tadlock*) as employing older, more figurative notions of jurisdiction where a tribunal violates its jurisdictional mandate whenever it exceeds the ambit of a governing rule. The "standard of review" reading leaves intact the Court's authority to hear the full range of appeals but merely establishes that the Federal Circuit will vacate those rulings that resolve matters against appellants where it regards the evidence as "open to debate."

There are good reasons to infer that the Federal Circuit intends the standard of review reading over the jurisdictional reading. For starters, the jurisdictional reading would seem markedly out of step with the last three decades of Supreme Court precedent, which only reads adjudicatory constraints as jurisdictional when they derive from a clear statement from Congress. *Kontrick v. Ryan*, 540 U.S. 443, 444 (2004). Reading *Tadlock* as setting down a jurisdictional rule would seem to place that decision into irresolvable conflict with the Supreme Court's precedent in *Shinseki v. Sanders*, 556 U.S. 396 (2009). Specifically, a Court cannot be *required* under section 7261 to conduct a plenary review of the evidentiary record and make a case-specific determination, as *Sanders* establishes, and jurisdictionally barred under the exact same statutory provision from doing so, as *Tadlock* suggests. Beyond being mutually exclusive, these readings represent opposite views about this Court's jurisdiction under section 7261.

Finally, and most relevant here, reading *Stinson* as a standard of review makes sense because nothing in the decision sets out a legal rule that governs how this Court assesses *administrative error*. All the language setting out a burden in *Stinson* and *Tadlock* is directed at this Court, rather than VA. Nothing in *Stinson* purports a rule that VA commits administrative error unless it resolves every fact in an evidentiary record that could be deemed open to debate; nor can any language in *Stinson* be read as imposing a burden of persuasion on VA to show that administrative error can be inferred unless the Agency can show that the salient facts are not open to debate—a proposition the Supreme Court expressly repudiated in *Sanders*.

15

Nevertheless, unless and until we receive some clear guidance from the Federal Circuit on how this line of cases (*Tadlock*, *Stinson*, *Golden*, etc.) operates, we are bound by the strictures they set forth. So, in cases like Mr. Williams's, where we necessarily must engage with record evidence not addressed by the Board to answer the question presented by the appellant—i.e, whether the record reasonably raised an issue or claim such that the Board had a duty to address it—*Stinson* appears to tie our hands. Where assessing administrative error is deemed weighing of evidence, we can do neither. Our best course for now is to abstain from assessing error and leave it to the Board to resolve the matter in the first instance.

JAQUITH, *Judge*, concurring: I join my esteemed colleagues in concluding that a limited remand is an appropriate resolution under the specific facts and circumstances of this case.[93] I also concur with the majority's conclusion that nothing in recent Federal Circuit precedent undermines the Court's *authority* to assess whether the record reasonably raises an issue. I further agree that there is nothing the Court can glean from the Board's silence; we are left to speculate about why the Board failed to address the veteran's potential entitlement to TDIU.[94] Although both the majority opinion and the other concurrence are well written, I believe a few points warrant additional discussion.

First, I see *Stinson* not so much as tying our hands but as reminding us of the limits of our reach. The Federal Circuit acknowledged and affirmed what our Court has understood our role and obligation to be, holding that, "The Veteran's Court . . . may appropriately assess whether the record contains sufficient evidence, as a matter of law, to support a particular argument."[95] Our Court's responsibility to determine whether the Board clearly erred in making a finding of fact, or in failing to do so, is quite different from finding facts in the first instance.[96] By statute, the Court *shall* hold unlawful and set aside or reverse clearly erroneous Board findings of material fact adverse to claimants,[97] but in no event subject the Board's findings of fact to trial de novo.[98]

### A. A *Golden* Rule?

Moreover, *Golden*[99] seems to reinforce and augment *Stinson* by illustrating how our Court can properly assess whether an unaddressed issue was reasonably raised. *Golden* detailed that it is not impermissible factfinding for the Court to analyze, characterize, explain, paraphrase, and

---

[93] *Ante* at 14, 16.

[94] *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.").

[95] *Stinson v. McDonough*, 92 F.4th 1355, 1363 (Fed. Cir. 2024); *see, e.g.*, *Phillips v. McDonough*, 37 Vet. App. 394, 400 (2024) ("The Federal Circuit has held that . . . VA is obligated to 'determine all potential claims raised by the evidence.'") (quoting *Comer v. Peake*, 552 F.3d 1362, 1367 (Fed. Cir. 2009)); *Healey v. McDonough*, 33 Vet.App. 312, 318 (2021) ("The Board must investigate reasonably raised theories of service connection, and whether a theory is reasonably raised generally depends on the evidence that is in the record before the agency.")

[96] *Tadlock v. McDonough*, 5 F.4th 1327, 1334 (Fed. Cir. 2021).

[97] 38 U.S.C. § 7261(a)(4).

[98] 38 U.S.C. § 7261(c); *Tadlock*, 5 F.4th at 1334.

[99] *Golden v. Collins*, 161 F.4th 1346, 1351-52 (Fed. Cir. 2025).

synthesize a Board decision.[100] To state it more completely, the Court "has the prerogative—indeed, the duty—of examining the basis for, and then synthesizing and analyzing the [Board's] findings"—a "multifaceted role that is not meant to be robotic."[101] In doing so, the Court "is not limited to considering only the facts relied on by the Board and the VA but must consult the full agency record."[102] That consultation leads to permissible recognition and acknowledgement of what the record reflects.[103] And simply identifying and observing evidence in the record, or the lack of it, is not impermissible factfinding.[104]

The Federal Circuit has traced VA's obligation—and our judicial responsibility to ensure its fulfillment—to the Congressional mandate that VA "'fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits,'" meaning that "VA must determine all potential claims raised by the evidence, applying all relevant laws and regulations, regardless of [how] the claim[s are] specifically labeled."[105] VA's obligation is not limited to its regional offices; Board proceedings are also nonadversarial and pro-claimant, so the Board also must read claims and pleadings sympathetically.[106] From the outset, the RO and the Board are obligated to read a claimant's filings in a liberal manner, including the question of what issues were raised, whether or not the claimant is represented by counsel.[107] And the Federal Circuit has noted with approval that "the Veterans Court, upon exercising jurisdiction in such circumstances, has repeatedly held . . . that the Board commits error in not deciding [issues that were reasonably raised before it]."[108] After all, "Congress created the Veterans Court for [the] express purpose . . . 'of ensuring that veterans were treated fairly by the government and to see that all veterans entitled to benefits received them.'"[109] Fulfilling that purpose requires adhering to "the 'user friendly' system Congress intended,"[110] the veteran being afforded an opportunity to present evidence to the VA factfinder, the Board satisfying the veteran's right to "one review on appeal to the Secretary,"[111]

---

[100] *Id.* at 1352 (citing *Chen v. Holder*, 703 F.3d 17, 23 (1st Cir. 2012)).

[101] *Chen*, 703 F.3d at 23.

[102] *Golden*, 161 F.4th at 1352.

[103] *Id.*

[104] *Id.*

[105] *Roberson v. Principi*, 251 F.3d 1378, 1384 (Fed. Cir. 2001 (quoting *Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998) ("'Congress expects [VA] to fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits.'") (quoting H.R. REP. NO. 100–963, at 13 (1988), reprinted in 1988 U.S.C.C.A.N. 5782, 5795)).

[106] *Comer*, 552 F.3d at 1368; *See* 38 C.F.R. § 20.202(a) (2026) ("The Board will construe [Notice of Disagreement] arguments in a liberal manner for purposes of determining whether they raise issues on appeal.").

[107] *Robinson v. Peake* (*Robinson I*), 557 F.3d 1355, 1361-62 (Fed. Cir. 2009); *Bonds v. McDonough*, 35 Vet.App. 445, 454 (2022) (Toth, J., concurring) ("Assessing the scope of a pleading is[,] thus[,] an antecedent consideration to evaluating . . . whether the Board failed to address an issue reasonably raised by the evidence of record.").

[108] *Bean v. McDonough*, 66 F.4th 979, 988 (Fed. Cir. 2023).

[109] *Euzebio v. McDonough*, 989 F.3d 1305, 1323 (Fed. Cir. 2021) (quoting *Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006)).

[110] *Stinson*, 92 F.4th at 1363.

[111] 38 U.S.C. § 7104(a); *see Cooper v. McDonough*, 38 Vet.App. 1, 5 (2024).

17

and then (in turn) our Court,[112] and the Federal Circuit,[113] providing the independent judicial review prescribed by statute.[114] To the extent that there is tension among the Federal Circuit's precedential decisions, our Court is obligated to review and reconcile their holdings, if possible, and if not, to follow the earlier caselaw as the binding precedent.[115]

It is not clear whether the perceived tension between *Stinson*, *Tadlock*, and our "reasonably raised" caselaw is a labeling problem or one with the level of our Court's engagement with the evidence. From the time of its origin, our Court has declared, in accordance with regulations based on statutes, that the Board "must review all issues which are reasonably raised from a liberal reading of the appellant's substantive appeal,"[116] and that this liberal reading extends to "issues raised in all documents or oral testimony submitted prior to the [Board] decision."[117] In *Roberson*, the Federal Circuit applied these principles in the context of TDIU, holding that:

Once a veteran submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability, . . . VA must consider TDIU because . . . VA must determine all potential claims raised by the evidence, applying all relevant laws and regulations, regardless of whether the claim is specifically labeled as a claim for TDIU.[118]

The Federal Circuit continues to apply the *Roberson* description of VA's obligation to determine and address all potential claims raised by the evidence.[119] Our Court has indicated that whether an issue is reasonably raised by the record is a factual question positively answered if there is some supporting evidence.[120] However, the Federal Circuit has held that "[a]n allegation that the Board failed to comply with its obligation to read filings liberally may, of course, be raised for the first time on appeal to the Veterans Court," which also reviews the record to determine whether it contains evidentiary support for a theory of recovery the Board was obligated to

---

[112] 38 U.S.C. §§ 7252, 7261.

[113] 38 U.S.C. § 7292(d).

[114] *See, e.g.*, *Deloach v. Shinseki*, 704 F.3d 1370, 1378-80 (Fed. Cir. 2013).

[115] *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1579 (Fed. Cir. 1989); *see Deckers Corp. v. U.S.*, 752 F.3d 949, 965 (Fed. Cir. 2014); *Rouse v. McDonough*, 34 Vet.App. 43, 49 (2021) (citing *Johnston* as paralleling our Court's rule that "one panel may not proffer an opinion that 'conflicts materially' with an earlier panel opinion.") (quoting *Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992)).

[116] *Myers v. Derwinski*, 1 Vet.App. 127, 130 (1991).

[117] *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991).

[118] *Roberson*, 251 F.3d at 1384.

[119] *See, e.g.*, *Perciavalle v. McDonough*, 74 F.4th 1374, 1381 (Fed. Cir. 2023); *Murphy v. Wilkie*, 983 F.3d 1313, 1319 (Fed. Cir. 2020); *Shea v. Wilkie*, 926 F.3d 1362, 1368 (Fed. Cir. 2019).

[120] *Robinson v. Peake* 21 Vet.App. 545, 553 (2008) ("The question of the precise location of the line between the issues fairly raised by the appellant's pleadings and the record and those that are not must be based on the record in the case at hand; therefore, it is an essentially factual question."), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355, 1361 (Fed. Cir. 2009) (holding that the Board need not address or consider theories or potential claims that have no support in the record); *see Garner v. Tran*, 33 Vet.App. 241, 247 (2021); *Lynch v. Wilkie*, 30 Vet.App. 296, 304 (2018).

18

address.[121] Indeed, "'*Roberson*, *Robinson*, and *Comer* . . . require the Veterans Court to look at all of the evidence in the record to determine whether it supports related claims for service-connected disability even though the specific claim was not raised by the veteran.'"[122] Determining whether record evidence raised a genuine issue the Board should have addressed is not impermissible factfinding;[123] it is an important part of the independent judicial review of whether Board decisions are based "upon consideration of all evidence and material of record and applicable provisions of law and regulation" and include "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record."[124]

"[I]f the Board fails to consider an issue reasonably raised in the record, then the Board commits error requiring remand."[125] "Reversal is warranted when the only permissible view of the evidence contradicts the Board's decision, and the Board 'has performed the necessary fact[]finding and explicitly weighed the evidence.'"[126] Our Court has the authority to remand cases to the Board "if the record 'does not support the agency action, if the agency has not considered all relevant factors, or if [our] Court simply cannot evaluate the challenged agency action on the basis of the record before it.'"[127]

There is one possible hiccup. In *Comer*, the Federal Circuit restated and applied its holding in *Roberson* that VA's obligation "'to determine all potential claims raised by the evidence'" means that "VA must consider whether a TDIU award is warranted whenever 'a veteran submits evidence of a medical disability and makes a claim for the highest rating possible, and additionally submits evidence of unemployability.'"[128] But when it described the *Roberson* test again in the next paragraph, it added a word—cogent—saying: "Simply put, under *Roberson*, a claim to TDIU benefits . . . is implicitly raised whenever a pro se veteran, who presents *cogent* evidence of

---

[121] *Robinson I*, 557 F.3d at 1361.

[122] *Shea*, 926 F.3d at 1369 (quoting *Scott v. McDonald*, 789 F.3d 1375, 1381 (Fed. Cir. 2015)).

[123] This principle is manifest in other adjudicative contexts too. *See Arter v. U.S.*, 179 Fed.Cl. 59, 63 (2025) ("[A]t the summary judgment stage[,] the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Pursuant to Fed. R. Civ. P. 6(a), summary judgment is appropriate as a matter of law when there are no genuine issues of material fact. *Dillon Tr. Co. LLC v. U.S.*, 176 F.4th 1298, 1310 (Fed. Cir. 2026). *See generally Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999) (holding that in a patent infringement case, the trial court's characterization of an expert's statement as conclusory did not constitute impermissible factfinding: "Rather, the court was correctly trying to determine if the expert's testimony raised a genuine issue for trial.").

[124] 38 U.S.C. §§ 7104(a)(d)(1) (describing the Board's jurisdiction and obligations), 7252 (describing the Court's jurisdiction), and 7261 (describing the scope of the Court's review); *see Thomas v. McDonough*, 97 F.4th 850, 853 (Fed. Cir. 2024) (holding that the Board's required written statement of its findings and conclusions, and the reasons or bases for them, must address the provisions of law and regulation that are "'made potentially applicable through the assertions and issues raised in the record.'" (quoting *Schafrath v. Derwinski*, 1 Vet. App. 589, 593 (1991)).

[125] *Massie v. Shinseki*, 724 F.3d 1325, 1327 (Fed. Cir. 2013).

[126] *Frazier v. McDonough*, 37 Vet.App. 244, 261 (2024) (quoting *Deloach*, 704 F.3d at 1380-81), *appeal docketed*, *Franz v. Collins*, No. 25-1070 (Fed. Cir. Oct. 16, 2024).

[127] *Chavez v. McDonough*, 98 F.4th 1369, 1375 (Fed. Cir. 2024) (quoting *Euzebio*, 989 F.3d at1323).

[128] *Comer*, 552 F.3d at 1367 (quoting *Roberson*, 251 F.3d at 1384).

unemployability, seeks to obtain a higher disability rating."[129] Cogent is defined as "[c]ompelling or convincing."[130] The term appears to have been injected by Mr. Comer and to have been an apt description of the evidence Mr. Comer presented, which the Federal Circuit characterized as "persuasive and pervasive evidence in the record demonstrating his unemployability."[131] An appellate assessment of cogency would go beyond identifying, recognizing, observing, and acknowledging evidence in the record and analyzing, characterizing, explaining, paraphrasing, and synthesizing a Board decision. But "cogent" appears to be case-specific rather than a universal limit on what evidence may reasonably raise an issue. Within the year *Comer* was decided, the Federal Circuit synthesized its salient precedent thus: "Together, *Comer* and *Roberson* make clear that a claim for TDIU can be implicitly raised only where the veteran proffers *some evidence* of unemployability."[132]

## B. The AMA[133] Express Brings Express Denial

Next, although I completely agree that the Board's silence did not amount to an implicit determination that the record did not reasonably raise entitlement to TDIU,[134] I am skeptical that implicit denial of a reasonably raised TDIU claim remains tenable. In *Hamill v. Collins*, the Federal Circuit flatly held that "under the AMA, a veteran's claims can no longer be implicitly denied."[135] While *Hamill* focused on VA's heightened statutory obligation to follow Congress's clear directive to identify the issues adjudicated in its initial decision,[136] and section 5104 does not apply to the Board,[137] the Federal Circuit's holding was without limitation.

---

[129] *Comer*, 552 F.3d at 1367 (emphasis added).

[130] *Cogent*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see Singh v. Gonzales*, 495 F.3d 553, 557-58 (8th Cir. 2007) ("'Cogent' means 'convincing.'")

[131] *Comer*, 552 F.3d at 1368.

[132] *Jackson v. Shinseki*, 587 F.3d 1106, 1111 (Fed. Cir. 2009); *see Phillips*, 37 Vet.App. at 400 ("'VA must consider whether a TDIU award is warranted 'whenever a veteran submits evidence of a medical disability and makes a claim for the highest rating possible[] and additionally submits evidence of unemployability.'" (quoting *Roberson*, 251 F.3d at 1384)). A party's theory of the case must be presented to the factfinder "'if there [is] *any* evidence to support it,'" and it is error to do so on any theory not supported by any evidence. *U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1136 (9th Cir. 2023) (quoting *Blassingill v. Waterman S.S. Corp.*, 336 F.2d 367, 368 (9th Cir. 1964)). *See Reed v. Union P. R. Co.*, 185 F.3d 712, 719 (7th Cir. 1999) ("Reed only needs to furnish 'some evidence' to earn a jury instruction on the claim."). Similarly, "'[a] defendant is entitled to an instruction on a lesser included offense if there is any evidence fairly tending to bear upon the lesser included offense, 'however weak' that evidence may be.'" *United States v. Gibbs*, 904 F.2d 52, 58 (D.C. Cir. 1990) (quoting *United States v. Thornton*, 746 F.2d 39, 47 (D.C. Cir. 1984)).

[133] "AMA" is an initialism for the Veterans Appeals Improvement and Modernization Act of 2017, which established the current framework for claims and appeals processing as of February 19, 2019, and claimants may elect to opt in to the AMA system from the legacy appeals system. Pub. L. No. 115-55, 131 Stat. 1105 (codified as amended in scattered sections of 38 U.S.C.). *See, e.g.*, 38 C.F.R. §§ 3.2400, 19.2, 20.4 (2026).

[134] *Ante* at 6-8.

[135] *Hamill v. Collins*, 166 F.4th 1030, 1033 (Fed. Cir. 2026).

[136] *Id.* at 1034-39 (stating that "[w]e conclude that Congress eliminated the judicially []created implicit denial doctrine when it enacted the AMA," then highlighting the "deliberately and clearly heightened the notice requirement for VA's initial decisions" spelled out in 38 U.S.C. § 5104(b)(1)).

[137] *Greer v. McDonough*, 36 Vet. App. 220, 227 (2023) ("[S]ection 5104 as amended by the AMA does not apply to

Moreover, the Board is responsible for reviewing, and thereby ensuring, VA's fulfillment of its heightened statutory notice obligation.[138] In addition to establishing more exacting VA notice requirements for the Board to police, the AMA also heightened the Board's own statutory notice obligation. Since the Veterans' Judicial Review Act in 1988, the Board has been required to provide claimants with notice of its decisions and each decision has been required to include "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," as well as "an order granting appropriate relief or denying relief."[139] The AMA added a new requirement, that each Board decision include "a general statement—(A) reflecting whether evidence was not considered in making the decision because the evidence was received at a time when not permitted . . . and (B) noting such options as may be available for having the evidence considered."[140] An adequate general statement under the new subsection "is one that *accurately informs* a claimant whether the Board did not consider evidence because it was received during a time not permitted by [38 U.S.C. §] 7113, and what options may be available for having VA consider that evidence."[141] *Cook* foreshadowed and parallels *Hamill*; both focus on Congress requiring explicit, written notice[142] that enables a claimant to make an informed decision—in *Hamill*, regarding the options for obtaining review of an adverse decision,[143] and in *Cook*, "on whether and how to have VA consider any evidence not considered by the Board."[144] Now the Board must not only provide claimants written reasons or bases explaining its weighing of the probative value of evidence. Applying the Federal Circuit's analysis in *Hamill*, "[i]t would make little sense for the implicit denial doctrine—a judicial construct created under the legacy system—to proceed unchanged in light of th[ese] clear statutory directive[s] for explicit notice."[145]

---

Board decisions.").

[138] *See* 38 U.S.C. §§ 511(a), 7104(a). "[A]ll questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits . . . to veterans or the dependents or survivors of veterans," 38 U.S.C. § 511(a), "shall be subject to one review on appeal to the Secretary [and f]inal decisions on such appeals shall be made by the Board," 38 U.S.C. § 7104(a). It is for the Board, in the first instance, to determine whether VA's notice letter adequately conveyed the notice elements required by section 5104 to an appellant. *Cowan v. McDonough*, 35 Vet.App. 232, 245 (2022).

[139] Pub. L. 100–687, sec. 205, 102 Stat 4105 (Nov. 18, 1988), codified at 38 U.S.C. § 4004(d); *see* S. 11, 100th Cong., 134 Cong. Rec. 31775 (Oct. 19. 1988) (explaining that the law requires the Board "to mail a detailed statement of its decision to the claimant and the claimant's authorized representative" and expands the specified content of Board decisions "to require that such decisions include findings and conclusions and reasons and bases therefor, on all material Issues of fact, law, and matters of discretion, as well as an order granting or denying relief."). The Board's current notice requirement is codified at 38 U.S.C. §§ 7104(d) and (e).

[140] 38 U.S.C. § 7104(d)(2).

[141] *Cook v. McDonough*, 36 Vet.App. 175, 189 (2023).

[142] *See Hamill*, 166 F.4th at 1036 ("The legislative history surrounding the adoption of the AMA consistently reenforces Congress'[s] intent to require clear and *explicit* notice."); *Cook*, 36 Vet.App. at 193-94 ("The House committee report stated that the AMA would '[e]stablish that the Board shall provide written notice to the appellant if the Board does not review evidence that the veteran did not submit timely; such written notice must include an explanation of options that may be available for having the evidence considered by VA.'" (quoting H.R. Rep. No. 115-135, at 9 (2017)).

[143] *Hamill*, 166 F.4th at 1035-38 (highlighting legislative history).

[144] *Cook*, 36 Vet.App. at 189.

[145] *Hamill*, 166 F.4th at 1037.

Under the legacy system, the implicit denial rule may apply when a decision that expressly refers to one claim provides a veteran with reasonable notice that another claim for benefits is also denied.[146] As our Court explained, if a "decision discusses a claim in terms sufficient to put the claimant on notice that it was being considered and rejected, then it constitutes a denial of that claim even if the formal adjudicative language does not 'specifically' deny that claim."[147] However, the Court warned that "accepting a broadly interpreted doctrine of sub silentio denials has grave implications for due process and protecting the appellate rights of veterans."[148] That problem is most acute when the purported implicit denial is of an implied claim, as the *Ingram* Court highlighted:

Treating the Secretary's failure to sympathetically read and adjudicate a reasonably raised claim as a pending claim benefits veterans because it protects their appellate rights and works no hardship on the Secretary in that it requires only that each claim be specifically addressed. If a veteran is aware of a particular benefit and makes an unambiguous claim for it, the Secretary's duty to sympathetically read [the veteran's] submissions is irrelevant. That duty primarily helps those veterans who have not clearly articulated that they are seeking a particular benefit. It is illogical to expect such veterans to immediately recognize when the Secretary has failed to adjudicate a reasonably raised claim because it is ignorance of the intricacies of potential claims that makes the duty necessary. Hence, if the law equates a VA failure to adjudicate a reasonably raised claim to a sub silentio denial of the claim, then it is unlikely that the veteran would have sufficient notice of the disposition of his claim to assert error on direct appeal.[149]

This is just such a case. As the majority concludes, the Board's silence about TDIU was not an implicit determination about anything[150]—providing no notice regarding whether or not TDIU was even considered.

In January 2010, the veteran said he had been "medically discharged from the Army National Guard as unemployable," and his disability compensation had been reduced, so he "was unable to support [himself] and keep [his] home."[151] In March 2010, the veteran told a VA psychologist that his depression symptoms had "increased in both frequency and severity," and the psychologist diagnosed him as suffering from major depressive disorder, moderate to severe, related to his service-connected medical conditions.[152] The veteran said he felt discriminated against and forced out of the military when he was medically retired—1 year and one rank short of his plan—and said that he had begun school full time through a VA retraining program.[153] The psychologist noted that as a student, the veteran's mental health condition was not interfering with

---

[146] *Adams v. Shinseki*, 568 F.3d 956, 964 (Fed. Cir. 2009).

[147] *Ingram v. Nicholson*, 21 Vet.App. 232, 255 (2007).

[148] *Id.* at 254.

[149] *Id.* at 253.

[150] *Ante* at 8.

[151] R. at 8606.

[152] R. at 8536-38.

[153] R. at 8539.

22

his employment functioning but it "significantly interfere[d] in his normal daily functioning" and "interfere[d] in his ability to maintain concentration during his educational classes" (although he was "pursuing his educational goals successfully").[154] In May 2010, VA told the veteran that it denied entitlement to TDIU because it wasn't shown that he was unable to work as a result of his service-connected disabilities,[155] highlighting that the veteran had not completed and returned an application for TDIU in response to the RO's request that he do so.[156]

In October 2018, the veteran was again diagnosed with major depressive disorder with symptoms for the past several years, then including "chronic sleep impairment, flattened affect, difficulty in establishing and maintaining effective work and social relationships, inability to establish and maintain effective relationships, [and] suicidal ideation."[157] The veteran told a VA psychologist that he has a master's degree in art, and that degree only enabled him to work "3 hours a day as an educational aid (lunchroom monitor)."[158] The psychologist concluded that the veteran's mental health disability included "[o]ccupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood."[159] In December 2018, he told another psychologist that he was unemployed and could not get a job, even though he had a college degree.[160]

The Board's specific factual findings included that "the probative evidence under review is at least in relative equipoise in establishing the [v]eteran's adjustment disorder with depressed mood more nearly approximates occupational and social impairment with deficiencies in most areas," entitling him to a 70% rating for his adjustment disorder with depressed mood.[161] That numeric rating is significant, because TDIU may be awarded based on a single service-connected disability rated at 60% or more that renders a veteran unable to secure or follow a substantially gainful occupation.[162] The 70% rating the Board awarded includes occupational impairment with work deficiencies and difficulty in adapting to stressful circumstances in a worklike setting, as well as impairment in attributes generally thought to be important in the workplace and disruptive symptoms that interfere with routine activities.[163] Yet the Board failed to note that the veteran was unemployed, said he couldn't get a job, or that the last time he was employed, his master's degree only enabled him to get a part-time job as a lunch monitor. And the Board did not address employability at all.[164]

---

[154] R. at 8537.

[155] R. at 8492.

[156] R. at 8484.

[157] R. at 5402 (capitalization altered).

[158] R. at 5398.

[159] R. at 5396.

[160] R. at 5104, 5173.

[161] R. at 5-6.

[162] 38 C.F.R. § 4.16(a).

[163] 38 C.F.R. § 4.130, General Rating Formula for Mental Disorders.

[164] Although the rating schedule for mental disabilities takes into consideration the impact of the mental disability on the occupational functioning of a veteran, "the criteria for entitlement to TDIU benefits differs from scheduler rating

In my view, the Court can navigate the strait between the Scylla and Charybdis here—*Stinson*/*Tadlock* and *Roberson*/*Comer*/*Robinson*. Neither *Stinson* nor *Tadlock* overrules, repudiates, or even mentions *Roberson*, *Comer*, or *Robinson*.[165] *Golden* and *Bean* help light the way. Moreover, it bears repeating that the Federal Circuit stated, in *Stinson*, that when presented with a new issue on appeal, the Court "may appropriately assess whether the record contains sufficient evidence, as a matter of law, to support a particular argument."[166] The Court can do that by observing, identifying, recognizing, and acknowledging the evidence in the record and analyzing, characterizing, explaining, paraphrasing, and synthesizing the Board decision.[167] There can be little question that such attention would result, at the very least, in a remand because the Board erred by failing to fulfill its "independent obligation to address potentially favorable, material evidence of record and to provide reasons or bases for its weighing of that evidence."[168] Therefore, although I concur that a limited remand represents the best course of action in this case, I do not read the Federal Circuit's precedent as foreclosing other means by which the Court may ensure that the Board addresses all issues reasonably raised before it.

Copies to:

Rebecca Pierce, Esq.

VA General Counsel (027)

---

entitlement, . . . and the Board should evaluate entitlement to TDIU in the first instance." *Locklear v. Shinseki*, 24 Vet.App. 311, 317-18 (2011).

[165] *See Ingram*, 21 Vet.App. at 249 ("We will not presume that the Federal Circuit would implicitly overrule its own caselaw both because a panel of the Federal Circuit cannot overrule the decision of another panel, . . . and because the Federal Circuit has made itself clear when it intends to overrule its own caselaw.").

[166] *Stinson*, 92 F.4th at 1363.

[167] *See Golden*, 161 F.4th at 1352.

[168] *Edwards v. McDonough*, 36 Vet.App. 56, 65 (2023).